Stanceu, Chief Judge:
*1365 In this consolidated case, plaintiffs contested a final determination of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") concluding an antidumping duty investigation on certain corrosion-resistant steel products ("CORE") from Taiwan (the "subject merchandise").[1] The court previously ordered Commerce to reconsider the final determination with respect to three issues. Prosperity Tieh Enterprise Co. v. United States , 42 CIT ----, 284 F.Supp.3d 1364 (2018) (" Prosperity I ").
Before the court is the Department's decision (the "Remand Redetermination") responding to the court's order in Prosperity I. Final Results of Redetermination Pursuant to Ct. Remand (May 23, 2018), ECF Nos. 86-1 (conf.), 87-1 (public) ("Remand Redetermination "). The court sustains the Remand Redetermination.
I. BACKGROUND
Background on this case is presented in the court's prior opinion and supplemented as necessary herein. Prosperity I , 42 CIT at ----, 284 F.Supp.3d at 1366-68.
In Prosperity I , plaintiffs Prosperity Tieh Enterprise Co., Ltd. ("Prosperity") and Yieh Phui Enterprise Co., Ltd. ("Yieh Phui")-each a Taiwanese producer and exporter of CORE-challenged aspects of the Department's amended final affirmative less-than-fair-value determination in Certain Corrosion-Resistant Steel Products From India, Italy, the People's Republic of China, the Republic of Korea and Taiwan: Amended Final Affirmative Antidumping Determination for India and Taiwan, and Antidumping Duty Orders , 81 Fed. Reg. 48,390 (Int'l Trade Admin. July 25, 2016) (" Amended Final Determination "). Id. , 42 CIT at ----, 284 F.Supp.3d at 1367 (2018). The decision amended the Department's final determination in Certain Corrosion-Resistant Steel Products From Taiwan: Final Determination of Sales at Less than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part , 81 Fed. Reg. 35,313 (Int'l Trade Admin. June 2, 2016) ( "Final Determination" ). The period of investigation was April 1, 2014 through March 31, 2015. Id.
Commerce submitted the Remand Redetermination to the court on May 23, 2018.
*1366 Remand Redetermination. Plaintiffs and defendant-intervenors filed comments on June 22, 2018. Pl. Yieh Phui's Comments on Final Results of Redetermination Pursuant to Court Remand (June 22, 2018), ECF Nos. 91 (conf.), 92 (public) ("Yieh Phui's Comments"); Comments of Defendant-Intervenors in Support of the Remand Redetermination (June 22, 2018), ECF No. 93 ("Def.-Intervenors' Comments"); Pl. Prosperity's Comments on the U.S. Dep't of Commerce's May 23, 2018 Final Redetermination Pursuant to Ct. Remand (June 22, 2018), ECF Nos. 94 (conf.), 95 (publ.) ("Prosperity's Comments"). Commerce replied to plaintiffs' comments on July 30, 2018. Def.'s Response to Pls.' Comments on Remand Results (July 30, 2018), ECF Nos. 99 (conf.), 100 (public) ("Def.'s Reply").
II. DISCUSSION
A. Jurisdiction and Standard of Review
The court exercises jurisdiction pursuant to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c) (2012), which grants the Court of International Trade jurisdiction of any civil action commenced under 19 U.S.C. § 1516a.[2] The court reviews the Remand Redetermination based on the agency record. See Customs Courts Act of 1980, § 301, 28 U.S.C. § 2640(b) ; 19 U.S.C. § 1516a(b)(1)(B)(i). The court "shall hold unlawful any determination, finding, or conclusion found ... to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).
B. The Remand Redetermination
In Prosperity I , the court ordered Commerce to: (1) correct its erroneous decision not to make adjustments in the home market sales prices of Yieh Phui and Synn Industrial Co., Ltd. ("Synn") (which Commerce treated as a single entity in the investigation) for the foreign like product to account for certain rebates granted to the companies' home market customers; (2) reconsider its decision to treat as a single entity ("collapse") Prosperity and the Yieh Phui/Synn entity under 19 C.F.R. § 351.401(f) ; and (3) correct the Department's unlawful decision to use facts otherwise available and an adverse inference instead of information Prosperity reported on the yield strength of the products sold in its home market and the United States. Prosperity I , 42 CIT at ----, 284 F.Supp.3d at 1382.
In the Remand Redetermination, Commerce: (1) made, under protest, downward price adjustments to the home market sales prices of the Yieh Phui/Synn entity to account for the post-sale rebates granted to the companies' home market customers; (2) continued to treat Prosperity, Yieh Phui, and Synn as a single entity; and (3) used, under protest, Prosperity's reported yield strength data for its CORE production rather than facts otherwise available and an adverse inference. See Remand Redetermination 2. Applying these changes, Commerce revised the weighted average dumping margin for the Yieh Phui/Prosperity/Synn entity from 10.34% to 3.66%. Id. at 2-3. The court addresses each of these changes below.
C. Downward Price Adjustments to Yieh Phui's Home Market Sales
The court sustains the Department's decision in the Remand Redetermination to effectuate downward adjustments to the prices in Yieh Phui/Synn's home market sales in recognition of the post-sale rebates at issue in this litigation, a decision required by the Department's regulations.
*1367 Plaintiffs support this decision. Defendant-intervenors raise no specific objection but comment that they reserve the right to appeal this decision. Def.-Intervenors' Comments 1 n.1.
As in effect at the time of the contested determination, the regulations required Commerce to "use a price that is net of any price adjustment, as defined in § 351.102(b), that is reasonably attributable to the subject merchandise or the foreign like product, whichever is applicable." 19 C.F.R. § 351.401(c). As defined in § 351.102(b), "[p]rice adjustment means any change in the price charged for subject merchandise or the foreign like product, such as discounts, rebates and post-sale price adjustments, that are [sic ] reflected in the purchaser's net outlay." 19 C.F.R. § 351.102(b)(38) (emphasis added).
D. Use of Prosperity's Reported Yield Strength Data
As discussed in Prosperity I , Prosperity's responses to the Department's request for information on the yield strength of CORE products were based on a reasonable interpretation of the Department's instructions, and Commerce, therefore, was not permitted to use facts otherwise available with an adverse inference. See Prosperity I , 42 CIT at ----, 284 F.Supp.3d at 1378-81. The court reasoned that "[i]f Commerce is to take an action adverse to a party for an alleged failure to comply with an information request, it must fulfill its own responsibility to communicate its intent in that request" and that "[i]n this instance, the possibility that a respondent would not interpret the instructions according to the Department's subjective and undisclosed intent was a foreseeable consequence of the way Commerce drafted those instructions." Id. , 42 CIT at ----, 284 F.Supp.3d at 1381. The court concluded that "Commerce invoked its authority to use facts otherwise available and an adverse inference according to an invalid finding that misreporting on the part of Prosperity occurred." Id. , 42 CIT at ----, 284 F.Supp.3d at 1381-82. The court directed that Commerce, on remand, take "appropriate corrective action" to revise the dumping margin and "may not use facts otherwise available as a substitute for information that is now on the administrative record of the investigation." Id. , 42 CIT at ----, 284 F.Supp.3d at 1382. The court added that "[s]ubject to these requirements, the type of corrective action is a matter for Commerce to decide." Id. (footnote omitted).
In the Remand Redetermination, Commerce decided, under protest, to use "costs and yield strength as reported by Prosperity" to redetermine the antidumping duty margin. Remand Redetermination 13-14. This decision is in accordance with law and must be sustained. Defendant-intervenors raise no substantive objection but comment that they reserve the right to appeal this decision. Def.-Intervenors' Comments 1 n.1.
E. The Department's Decision to Treat as a Single Entity ("Collapse") Prosperity and the Yieh Phui/Synn Entity
The remaining issue for the court to decide in this litigation is whether Commerce may collapse Prosperity into the combined Yieh Phui/Synn entity, i.e., to treat Prosperity and the combined Yieh Phui/Synn entity as a single respondent for purposes of the investigation. Commerce decided to collapse the three companies in the amended final less-than-fair-value determination and did so again in the Remand Redetermination. Remand Redetermination 12. Prosperity and Yieh Phui oppose this decision. Yieh Phui's Comments 1; Prosperity's Comments 1-2. Defendant-intervenor supports this decision. Def.-Intervenor's Comments 1-3. The court sustains this decision, concluding that it is *1368 consistent with the applicable regulation and rests on findings supported by substantial record evidence.
There is no dispute that Prosperity, Yieh Phui, and Synn are all "affiliated" within the meaning of 19 U.S.C. § 1677(33)(E). The collapsing of Yieh Phui with Synn is also undisputed; as noted in Prosperity I , the decision to collapse Yieh Phui with Synn is not challenged by any party to this litigation. See Prosperity I , 42 CIT at ----, 284 F.Supp.3d at 1373 n.7.
Under its regulations, Commerce "will treat two or more affiliated producers as a single entity" when two conditions are met. 19 C.F.R. § 351.401(f)(1). First, affiliated producers must "have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities." Id. There is no dispute that this condition is met, Commerce having found that each affiliated producer manufactures subject merchandise. See Remand Redetermination 8. Second, Commerce must "conclude[ ] that there is a significant potential for the manipulation of price or production." 19 C.F.R. § 351.401(f)(1). Prosperity and Yieh Phui contend that the Department's affirmative finding that there existed "a significant potential for the manipulation of price or production," id. , does not accord with the regulation and is unsupported by substantial record evidence. See Prosperity's Comments 2; Yieh Phui's Comments 2.
Central to this issue is the level of discretion provided to Commerce by its regulation, 19 C.F.R. § 351.401(f)(2), which provides that "[i]n identifying a significant potential for manipulation of price or production, the factors the Secretary may consider include:
(i) The level of common ownership;
(ii) The extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and
(iii) Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.
19 C.F.R. § 351.401(f)(2). The regulation speaks of "a significant potential" for manipulation of price or production, and thus actual manipulation of price or production need not be found. The reference to "the factors the Secretary may consider include ...," id. (emphasis added), connotes a measure of discretion. The regulation does not make the factors exclusive. Nor does it preclude Commerce from invoking the collapsing authority where, for example, not all three of the factors are met or where the case for collapsing is not strong under each one of them when considered separately.
In the Remand Redetermination, Commerce stated that it "finds that the potential for manipulation between Prosperity and Synn derives from a combination of common ownership, shared management, and intertwined operations." Remand Redetermination 9.
As to the first factor, the level of common ownership, Prosperity owned 20% of the shares of Synn during the POI. Noting that its ownership of the combined Yieh Phui/Synn entity as a whole was much smaller than 20%, Prosperity argues that "the Y[ieh] P[hui]/Synn single entity has no ownership in Prosperity, Prosperity has no ownership in Y[ieh] P[hui], and Prosperity's ownership of the Y[ieh] P[hui]/Synn single entity is negligible." Prosperity's Comments 10. The fact remains that during the POI both Prosperity *1369 and Yieh Phui owned significant shares in Synn, a fact Commerce permissibly considered as support for its collapsing decision. Remand Redetermination 9, 29. In support of its argument that Commerce must look to the level of ownership of Prosperity in the combined Yieh Phui/Synn entity, see Prosperity's Comments 10, Prosperity cites AK Steel v. United States , 22 CIT 1070, 1084, 34 F.Supp.2d 756, 768 (Ct. Int'l Trade 1998), aff'd in part, rev'd in part , 226 F.3d 1361, 1376 (Fed. Cir. 2000). But the passage in the opinion on which Prosperity relies addressed affiliation under the statute, not collapsing under the Department's regulation. Prosperity also argues that its subsequent sale of the shares negates a possibility of future manipulation, id. at 11-12, but the sale occurred in December 2015, well after the close of the POI on March 31 of that year. The common ownership, therefore, had significance through and beyond the POI itself. Yieh Phui argues that the record evidence does not show that the 20% stake allowed Prosperity "to exercise any control over Synn's sales or production activities." Yieh Phui's Comments 4-5. In order to proceed with collapsing, Commerce was not required by its regulation to conclude that the ownership level, considered alone, would be determinative.
On the second factor, the extent to which management or board members of one firm sit on the board of directors of an affiliated firm, Commerce noted that Prosperity's chairman was one of three members of Synn's board of directors. See Remand Redetermination 9, 16, 25. Prosperity argues that Prosperity's representative could always be outvoted on Synn's board. Prosperity's Comments 12-13. Yieh Phui argues, similarly, that the seat on Synn's board does not establish that Prosperity is able to control either Synn's board of directors or Synn's daily operations, particularly in light of the lack of shared management. Yieh Phui's Comments 5. Nevertheless, Prosperity's chairman was in a position to exercise significant influence through participation on both boards of directors, chairing one and constituting one-third of the voting membership of the other. Commerce reasonably concluded that this factor supported its decision to collapse.
On the third factor, intertwined operations, Commerce found that "Prosperity provided galvanizing services to Synn under a tolling agreement during the POI" while Synn was revamping its galvanizing line for steel coils. Remand Redetermination 9-10. Commerce found that the tolling agreement allowed for access by Synn to certain of Prosperity's books and records. Id. at 10. Commerce also found that "cold-rolling pursuant to a purchase and sale agreement between Prosperity and Synn is indicative of intertwined operations during the POI."[3] Id. at 10-11. Prosperity and *1370 Yieh Phui argue that based on various criteria, these were not "significant transactions" between Prosperity and Synn as required for the third factor in the regulation, and Yieh Phui argues that the "books and records" access was only that necessary for verification under the agreement. See Prosperity's Comments 13-17; Yieh Phui's Comments 6-11. Regardless, the record information on the galvanizing and cold-rolling services signifies at least that Prosperity and Synn had engaged in sales transactions, for goods and services, on production-related operations during the POI. Commerce was justified in inferring from the record evidence that the Prosperity and Synn could engage in other transactions in the future. The evidence of transactions during the POI must be viewed in conjunction with the evidence supporting the Department's findings under the first two factors. In doing so, the court concludes that the Department's collapsing decision rests on findings supported by substantial evidence on the record considered as a whole.
III. CONCLUSION
For the reasons discussed above, the court sustains the Remand Redetermination. Judgment will enter accordingly.

Consolidated under Prosperity Tieh Enterprise Co. v. United States (Ct. No. 16-00138) is Yieh Phui Enterprise Co. v. United States (Ct. No. 16-00154). Order (Oct. 20, 2016), ECF No. 47.

All citations to the United States Code herein are to the 2012 edition and all citations to the Code of Federal Regulations herein are to the 2016 edition.

In Prosperity I , the court ordered Commerce to reconsider its collapsing decision because certain findings were inconsistent with record evidence, as Commerce acknowledged in submissions to the court. Prosperity Tieh Enterprise Co. v. United States , 42 CIT ----, 284 F.Supp.3d 1364, 1375 (2018). Specifically, Commerce incorrectly stated in the Collapsing Memorandum that cold-rolling services Synn provided to Prosperity under a tolling agreement had occurred during the period of investigation ("POI") when in fact the services had predated the POI. Id. Furthermore, Commerce acknowledged that record data detailing Synn's sales to Prosperity and its purchases from Prosperity were for calendar year 2014, rather than for the entire POI (April 1, 2014 to March 31, 2015), as the Department's findings had represented. Id. In the Remand Redetermination, Commerce clarified that, while cold rolling services pursuant to a tolling agreement between Prosperity and Synn had ceased prior to the POI, Synn continued to provide cold rolling services to Prosperity pursuant to a purchase and sale agreement during the first month of the POI. Final Results of Redetermination Pursuant to Ct. Remand (May 23, 2018), ECF Nos. 86-1 (conf.), 87-1 (public) at 10-11.